United States District Court

District of connecticut

Harold Sterling
David Myles
christopher Shuckra
Marlon Brathwaite

v.

Securus Technologies, INC.,
Abry Partners, Platinum Equity, LLC
AT+T Corp.

Case No. 3:18CV01310 (VAB)

December 13, 2018

Scanned At WCCI 12-18-18 C.O. W.C Pages 15

## First Amended complaint

Plaintiffs, Harold Sterling, David Myles, christopher Shuckra and Marlon Brathwaite are citizens of connecticut who are or were incarcerated in various connecticut Department of correction facilities, between 2015 and present day. Plaintiffs have been forced to pay Securus Technologies, Inc. (hereinafter "Securus" or "Defendant") A Plaintiffs were forced to pay Securus unjust, unreasonable, unfair and/or deceptive amounts for intrastate phone calls within connecticut including rates that were inflated by Securus to cover the payment of commissions to correctional facilities in exchange for being awarded exclusive ICS provider contracts.

A. Abry Partners and Platinum Equity, LLC were at relevant times the owner of Securus Technologies, Inc.

Plaintiff is a citizen of connecticut who had a family member/friend who was incarcerated in multiple connecticut Department of corrections (CTDOC) facilities for various periods of time between 2011 through 2018. Plaintiffs were forced to pay Securus unjust, unreasonable, unfair and/or deceptive amounts including rates for intrastate phone calls within Connecticut which were inflated by Securus to cover the payment of commissions to correctional facilities in exchange for being awarded exclusive ICS provider contracts. Plaintiffs also paid unjust and unreasonable deposit fees each time they funded their prepaid AdvanceConnect account with a credit card.

Securus is a privately held corporation headquartered in Dallas, Texas that provides managed telecommunications services at federal, state, and local correctional facilities in Arkansas and Illinois and throughout the United States. By using these services, inmates can communicate with family members, friends, attorneys, and other approved persons outside the correctional facilities.

Securus was formed through the 2004 acquisition of EverCom Systems, Inc. (Evercom) and T-Netix, Inc. (T-Netix) by H.I.G. Capital, LLC, a Miami-based private equity firm with more than $1 billion of equity capital under management. Securus's predecessors consolidated a large portion of the industry through the acquisition of several inmate telephone service providers across the United States in the late 1990s.

Securus provides and/or has provided ICS pursuant to contracts with forty-six States (including, in Illinois, a contract with the CT DOC dated October 19, 2012 continuing through June 30, 2017) as well as contracts with counties and municipalities across the United States (including counties in Arkansas) during the class period. Securus serves and/or has served approximately 2,200 Correctional facilities in forty-six States (including in Arkansas and Illinois) and more than 1.2 million inmates nationwide.

## Jurisdiction and Venue

Venue is proper in this District pursuant to 28 U.S.C. Section 139(b) in that Securus transacts substantial business within, and is subject to personal jurisdiction in, this District and thus "resides" in this District. Venue is also proper in this District pursuant to 28 U.S.C Section 1391(b) because a substantial part of the events giving rise to the claims asserted herein took place in this District.

---

[9] *See In re Rates for Interstate Inmate Calling Servs.*, 28 FCC Rcd. 14107, 14129 (F.C.C. Sept. 26, 2013) ("*Interstate Inmate Calling Servs. I*").

[8] Securus represents with respect to its ICS that it uses an internet protocol format to send inmate-initiated communications services through the entire course of the call until delivered to the terminating landline or wireless carrier. This is commonly referred to as Voice over Internet Protocol ("VoIP").

*See* FCC Opp. p.3 (stating that "each provider is a monopoly in a given facility").

Defendant's Unlawful Conduct

Inmates are literally a captive market for Securus, which provides pay telephone services in prisons, jails, and other correctional facilities. As noted by the Federal Communications Commission (the FCC), there are no competitive market forces to constrain the prices set by Securus.[1]

Securus has secured for itself the right to provide telephone services to hundreds of thousands of inmates through exclusive contracts with thousands of correctional facilities.[2] As a result of the monopolies created by these exclusive contracts, Securus faces little or no competition to challenge increasing telephone rates.[3]

In return for this monopoly power, Securus provides kickbacks which are formally referred to as "Site Commissions," and also frequently referred to as Concession fees, administration fees and other payments to the contracting parties and/or facilities. By way of example, Securus paid an 68% commission under the contract covering CT DOC facilities during the contract period;[4]

Securus pays concession fee to many State and county run correctional facilities. Securus pledged to pay Connecticut more than 68% of revenue generated from inmate telephone calls in exchange for being the exclusive provider of ICS to Connecticut prisons/jails. As a result of the absence of competition, families of incarcerated individuals often pay significantly more to receive a single 15-minute call from prison than for their basic monthly phone service.[5]

Securus charges vastly more than market rates for inmates' intrastate calls within the United States, as well as exorbitant, unreasonable, unjust, unfair, and/or deceptive Ancillary charges that lack any reasonable relationship to Securus's intrastate calling costs.[6]

The total payments of kickbacks in the form of site commissions (often referred to as concession fees, administrative fees and other payments) made by Securus to the correctional facilities it services have exceeded hundreds of millions of dollars. Securus's Chief Executive officer Rick Smith has stated that these kickbacks are "tremendously unfair... but it's the nature of being in the business.[7]

---

4 https://www.prisonphonejustice.org/media/phonejustice/Illinois_20122013_Securus_Phone_Contract.pdf

5 *Interstate Inmate Calling Servs. I*, 28 FCC Rcd. At 14130.

6 The FCC defines "Ancillary Charges" as "fees charged to ICS end users [anyone who pays for and uses inmate calling services] such as, but not limited to, a charge for the establishment of debit and prepaid accounts for inmates in facilities served by the ICS provider or those inmates' called parties; a charge to add money to those established debit or prepaid accounts; a charge to close debit or prepaid accounts and refund any outstanding balance; a charge to send paper statements to ICS end users; a charge to send calls to wireless numbers; fees characterized as "regulatory recovery fees," penalty charges assessed on the account for perceived three-way calling or other perceived violations of the security provisions mandated by the correctional facility; and other charges ancillary to the provision of communication services." *See* https://apps.fcc.gov/edocs_public/attachmatch/DOC-327664A1.pdfhttps://apps.fcc.gov/edocs_public/attachmatch/DOC-327664A1.pdf (last visited Dec. 20, 2016); see also 47 C.F.R. § 64.6000 (defining "Ancillary Charges").

During rulemaking proceedings governing interstate charges, the FCC investigated whether interstate charges were "unreasonably high, unfair, and far in excess of the cost of providing service".[8] The FCC concluded that they were, and that Securus and similar companies "exploited their economic position by charging rates for interstate calls greatly exceeding the cost of providing service, in direct violation of the requirements of sections 201 and 276 of the Federal communications Act that those rates be just, reasonable, and fair."[9] Likewise, the FCC has concluded that "it believes the same legal and policy concerns identified in the order apply equally with regard to high intrastate rates.[10]

More particularly, during the rulemaking proceedings regarding the rates and fees associated with ICS, the FCC concluded that:

• Under existing law, commission payments to correctional facilities are profit-sharing kickback arrangements and "arenot a... category of... costs" recoverable from end-users in the rates charged for interstate telephone calls. Interstate Inmate calling servs. I, 28 FCC Rcd. at 14135-37.

• Because correctional facilities grant the monopoly franchise partly on the basis of the commission payment offered, "competition" among providers produces increased commission payments and higher end-user charges. See id. at 14129.

7. Markowitz, Eric "Axil Death Threats, An Embattled Prison Phone Company CEO Speaks Out", The International Business Times, Jan. 26, 2016.

8. In re Rates for Interstate Inmate Calling Services, 28 FCC Fcd 15927, 15929 (F.C.C. Nov. 21, 2013).

9. FCC Op., at p. 1.

10. Interstate Inmate Calling Services., I, 28 FCC Rcd. At 14174.

• Inmate telephone rates have "inflicted substantial and clear harm on the general public (and not merely on private interests)" and must be rejected under existing legal precedent. Interstate Inmate calling Servs. II, 28 FCC Rcd. at 15938. [11]

• With regard to certain per call charges, "the record indicates these per call charges are often extremely high and therefore, unjust, unreasonable and unfair for a number of reasons." Interstate Inmate Calling Servs. I, 28 FCC Rcd. at 14154-55. [12]

• "For many years, interstate [inmate telephone service] rates have been unreasonably high, unfair, and far in excess of the cost of providing service." Interstate Inmate calling Servs. II, 28 FCC Rcd at 15929-30 (emphasis added). In regard to intrastate rates, the FCC has stated that: "we conclude that competition and market forces have failed to ensere just, reasonable, and fair interstate ICS rates, and, for the same reasons, we tentatively conclude that the same failure has occurred for intrastate ICS rates as well." Interstate Inmate calling Servs. I, 28 FCC Rcd. at 14174-75. [13]

The FCC has further stated, "for the same reasons we found that site commission payments are not part of the cost of providing interstate ICS, we tentatively conclude that site commissions should not be recoverable through intrastate rates. Interstate Inmante Calling Servs. I, 28 FCC Rcd. at 14175.

11. Interstate Inmate Calling Services II, 29 F.C.C. Fcd. at 13170, 13173.

12. Id at 13202.

13. Id at 13203.

In reference to the many Ancillary charges assessed by Securus and other inmate calling service providers, the FCC has expressed its concern that assessments of Ancillary charges "are not reasonably related to the cost of providing service." The FCC noted that the charges for services ancillary to the provision of ICS result in "significant additional burdens on consumers and considerably inflated the effective price they pay for ICS," concluding that "there is a broad consensus in the record on the need for the Commission to reform ancillary charges."

[14] *Interstate Inmate Calling Servs. I*, 28 FCC Rcd. at 14173-78.

[15] *See Billed Party Preferences For Interlata 0+ Calls*, 13 FCC Rcd. 6122, 6156 (FCC Jan. 29, 1998) (finding that inmate telephone rates "must conform to the just and reasonable requirements of Section 201").

[16] ~~*See Wright v. Corrections Corporation of America, et al.*, No. 00-cv-0293-GK (D.D.C.).~~

As demonstrated above, the FCC has unequivocally determined that interstate ICS providers have, for many years, charged unjust and unreasonable rates in violation of the Federal Communications Act, 47 U.S.C. sections 201 et seq. (the "FCA"), by incorporating commission payments by ICS providers to correctional facilities and other unjust and unreasonable fees and costs into their charges for interstate calls, and as the ICS Orders reflect, the same violative behavior and findings apply to intrastate calls. [14]

On June 16, 2014, the FCC implemented a mandatory Data collection to inform its evaluation of the costs of inmate calling services and reform options under the FCA. As part of that process, the FCC required all ICS providers to supply data regarding their costs of providing ICS, including information on the Ancillary charges imposed on ICS end users. [15]

The FCC's september 2013 and November 2013 orders did not create a new obligation for Securus; rather, they simply reiterated Securus's longstanding legal obligations - obligations that Securus violated throughout the class period.

As a result of Securus's imposition of exorbitant, unfair, unjust, and/or unreasonable rates and Ancillary Charges for intrastate calls during the class Period, Plaintiffs and members of the classes defined below (infra at 25) have been damaged.

Count 1 - Unjust Enrichment

Securus's conduct as described here in constitutes unjust Enrichment, for which plaintiffs are entitled to pursue equitable remedies under the common law.

As a direct and proximate result of securus's acts and practices alleged herein, Securus has been unjustly enriched and has obtained money, earnings, profits, and benefits directly from Plaintiffs to which securus is not otherwise entitled and which it would not have obtained but for unreasonably charging Plaintiffs amounts to cover Kickbacks and other exorbitant and/or unreasonable carges in order to reap unjust profits.

Securus's practices were intentional, knowing, malicious, and/or done with the intent to reap significant benefits at the expense of plaintiffs. Securus is not entitled to this enrichment and obtained this enrichment to the detriment of plaintiffs.

Plaintiffs have suffered, and will continue to suffer, damages as a result of Securus's unjust retention of proceeds from their acts and practices alleged herein and are entitled to pursue civil claims for restitution of the amounts charged to unjustly enrich Securus as alleged above.

Under principles of equity and justice, Securus should be required to restore the above-described unjust enrichment to Plaintiffs in amounts to be determined at trial.

Count 2 - Violation of the Connecticut Unfair Trade Practices Act (CUTPA), C.G.S. Section 42-110, et seq.

Securus's actions described in this Complaint

unwittingly being charged to fund kickbacks payments and pay exploitive fees and charges.

Plaintiffs are entitled to pursue civil claims for relief or recover compensation for their damages in the amount of the unjust and unreasonable rates charged and charges imposed as a result of the exploitive and/or improper conduct as alleged above, pursuant to C.G.S. Section 42-110g.

The named plaintiffs in this matter have all been incarcerated and utilized the Securus phones to make phone calls and have maintained Securus accounts in their name while not incarcerated to receive and pay for phone calls using Securus from incarcerated family and friends.

Count 3 - Violation of Telephone Consumer Protection Act of 1991

Securus has violated the TCPA of 1991 by making unauthorized robo calls to each of the plaintiffs between January 1, 2015 and July 1, 2017 in violation of the TCPA of 1991.

The robo calls were made to each of the plaintiffs on multiple occasions during

violate the Connecticut Unfair Trade Practices Act (CUTPA);

Securus violated the Connecticut Unfair Trade Practices Act (CUTPA) which prohibits persons from "engaging in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Securus knowingly took advantage of plaintiffs who were unable to protect their interest because (as known to Securus) plaintiffs were a captive market for Securus's services and had no ability to choose a provider who did not pay kickbacks and impose unconscionable charges when making or receiving a call involving an incarcerated person. As a direct result of Securus's violation of the CUTPA, plaintiffs have suffered damages, including being forced to fund the kickback payments and charged unconscionable fees.

Securus violated CUTPA under the circumstances presented in this case by engaging in an "unconscionable, false or deceptive act" by including amounts to fund kickbacks and for exploitive, improper and/or undisclosed fees and charges in the amounts collected from the plaintiffs for intrastate phone services. As a direct result of Securus's violation of the CUTPA plaintiffs have suffered damages as a result of

the aforementioned time period without plaintiffs' consent or authorization and the plaintiffs seeks damages as allowed under the TCPA of 1991.

## Prayer for Relief

WHEREFORE, plaintiffs request that this Court enter a judgment against Securus and in favor of plaintiffs, and award the following relief:

A. Declaration, judgment and decree that the conduct alleged herein:

- constitutes an unreasonable and unlawful act;
- unjustly enriched Securus;
- violates the CUTPA; and

B. Damages to plaintiffs to the maximum extent allowed under state and federal law;

C. Restitution and/or disgorgement of Securus's ill-gotten gains;

D. Pre and post judgment interest;

E. Such other and further relief as this Court may deem just and proper under applicable State of Connecticut or federal law.

JURY TRIAL DEMAND

Plaintiffs request a jury trial on all issues so triable.

Dated: December 14, 2018

Respectfully submitted,

THE PLAINTIFFS

[signature]

Harold Sterling # 385973
Robinson C.I.
285 Shaker Road
Enfield, CT. 06082

[signature]

David V. Myles # 353199
Robinson C.I.
285 Shaker Road
Enfield, CT. 06082

[signature]

Christopher Shuckra # 213510
Willard - Cybulski C.I.
391 Shaker Road
Enfield, CT. 06082

[signature]

Marlon Brathwaite
275 Fairlawn Avenue
Waterbury, CT. 06705