| | |
|---|---|
| HAROLD STERLING, ET AL., <br> *Plaintiffs*, <br><br> v. <br><br> SECURUS TECHNOLOGIES, INC. ET AL., <br> *Defendants*. | No. 3:18-cv-1310 (VAB) |

**RULING AND ORDER ON MOTION TO DISMISS**

Harold Sterling, Christopher Shuckra, David Myles, and Marlon Braithwaite

("Plaintiffs") are suing Securus Technologies, Inc. ("Securus"), ABRY Partners ("ABRY"),

Platinum Equity LLC ("Platinum"), and AT&T Corp. ("AT&T") (together "Defendants") for

violations of the Telephone Consumer Protection Act of 1991 ("TCPA"), 47 U.S.C. §§ 227, the

Connecticut Unfair Trade Practices Act ("CUTPA"), CONN. GEN. STAT. § 42–110a *et seq.*, and

unjust enrichment. First Am. Compl. ("First Amended Complaint") at 10–13, ECF No. 56.

Defendants have moved to dismiss all counts. Securus Technologies, Inc.'s Mot. to

Dismiss Pls.' First Am. Compl., ECF No. 60; Def. Platinum Equity, LLC's Mot. to Dismiss Pls.'

First Am. Compl., ECF No. 62; Def. AT&T Corp.'s Mot. to Dismiss Pursuant to Rule 8 & Rule

12(b)(6), ECF No. 66; Mot. of Def. ABRY Partners VII, LP to Dismiss First Am. Compl., ECF

No. 69.

For the reasons set forth below, the Court **GRANTS** Defendants' motions to dismiss,

ECF No. 60, 62, 66, 69.

# I.    FACTUAL AND PROCEDURAL BACKGROUND

## A.    Factual Allegations

Mr. Sterling, Mr. Shuckra, Mr. Myles, and Mr. Braithwaite, allegedly citizens of Connecticut, First Amended Complaint at 1, are or have been incarcerated in various Connecticut Department of Corrections facilities.[1] *Id.* at 1–2. Defendant Securus is allegedly "a privately held corporation headquartered in Dallas, Texas that provides managed telecommunications services at federal, state, and local correctional facilities . . . throughout the United States." *Id.* at 2. Securus allegedly contracted with the State of Connecticut's Department of Correction ("Department of Correction") to provide inmate calling services ("ICS") to inmates in Connecticut. *Id.* Co-Defendants ABRY and Platinum allegedly own Securus. *Id.* at 1, n.A.[2]

While incarcerated in Connecticut Department of Correction facilities, Plaintiffs claim to have "utilized the Securus phones to make phone calls." *Id.* at 11. They also allegedly "maintained Securus accounts in their name while not incarcerated to received and pay for calls using Securus from incarcerated family and friends." *Id.* Specifically, Plaintiffs allege that they and other inmates used "prepaid AdvanceConnect" accounts provided by Securus to make calls, and that they funded such accounts via credit cards. *Id.* at 2.

Securus allegedly charged Plaintiffs "unjust, unreasonable, unfair and/or deceptive amounts for intrastate phone calls within Connecticut, including rates that were inflated by Securus to cover the payment of commissions to correctional facilities in exchange for being awarded exclusive ICS provider contracts." *Id.* at 1. Plaintiffs claim that the "concession fees" or

---

[1] Plaintiffs' dates of incarceration are unclear. The first page of the First Amended Complaint states that "Plaintiffs . . . are or were incarcerated in various Connecticut Department of Correction facilities, between 2015 and present day." First Am. Compl. at 1. On the second page, the incarceration time is "between 2011 through 2018." *Id.* at 2.

[2] Co-Defendant AT&T is not named as a party in the First Amended Complaint, although it was listed as one of the defendants in footnote 3 of the original complaint. Ex. A, Notice of Removal, ECF No. 1.

alleged "kickbacks" to Securus ran as high as "68% of [the] revenue generated from inmate telephone calls" under the Connecticut Department of Correction contract. *Id.* at 4.

As a result of Securus' alleged "monopol[y]," "families of incarcerated individuals [allegedly] often pay significantly more to receive a single 15-minute call from prison than for their basic monthly phone service." *Id.* at 2. Securus also allegedly charged Plaintiffs "unjust and unreasonable" deposit fees when each of Plaintiffs funded their "AdvanceConnect" accounts via credit cards. *Id.* Plaintiffs also claim that Securus made "unauthorized robo calls" to each of them on multiple occasions between January 1, 2015 and July 1, 2017." *Id.* at 11.

Plaintiffs assert three causes of action against Defendants: (1) violation of the Telephone Consumer Protection Act; (2) violation of the Connecticut Unfair Trade Practices Act; and (3) unjust enrichment. First Am. Compl. at 10–13.

### B.     Procedural History

On February 23, 2018, Plaintiffs filed their Complaint in Connecticut Superior Court, Judicial District of Waterbury. Compl.

On August 8, 2018, Defendants removed the case under 28 U.S.C. §§ 1331, 1367, 1441, and 1446. Notice of Removal, ECF No. 1.

On August 15, 2018, Defendants filed motions to dismiss. Mot. of Def. ABRY Partners to Dismiss Compl., ECF No. 24; Def. AT&T Corp.'s Mot. to Dismiss Pursuant to Rule 8 & 12(B)(6), ECF No. 27; Def. Platinum Equity's Mot. to Dismiss, ECF No. 29; *see also* Def. Platinum Equity's Mem. in Supp. of its Mot. to Dismiss, ECF No. 30 Defs.' Omnibus Mot. to Dismiss, ECF No. 31.

From August to December of 2018, Plaintiffs moved for seven extensions of time to respond to Defendants' motions to dismiss. Mot. for Extension of Time to File Am. Compl. & to

Object to Defs.' Mot. to Dismiss, ECF No. 43; Mot. for Extension of Time to File Am. Compl. & Object to Pending Mots. to Dismiss, ECF No. 47; Mot. for Extension of Time to File Am. Compl. & Object to Pending Mots. to Dismiss, ECF No. 49; Final Mot. for Extension of Time to File Am. Compl. & Object to Pending Mots. to Dismiss, ECF No. 51; Mot. for Extension of Time to File Am. Compl. & Object to Pending Mots. to Dismiss, ECF No. 54; *see also* Order Granting Pls.' Mot. for Extension of Time to Respond, ECF No. 48; Order Granting Pls.' Mot. for Extension of Time to Respond, ECF No. 50; Order Granting Pls.' Mot. for Extension of Time to Respond, ECF No. 52; Order Granting Pls.' Mot. for Extension of Time, ECF No. 55.

On December 13, 2018, Plaintiffs filed their Amended Complaint. First Am. Compl., ECF No. 56.

On December 21, 2018, Defendants moved under Federal Rule of Civil Procedure 6(b) and Civil Local Rule 7(b) for an extension of time until February 1, 2019 to respond to Plaintiffs' Amended Complaint. Defs.' Mot. for Extension of Time to Respond to First Am. Compl., ECF No. 57.

On December 26, 2018, the Court granted Defendants' motion for an extension of time. Order Granting Defs.' Mot. for Extension of Time, ECF No. 58.

On February 1, 2019, Defendants moved to dismiss the counts in the First Amended Complaint. Securus Technologies, Inc.'s Mot. to Dismiss Pls.' First Am. Compl., ECF No. 60; Def. Platinum Equity, LLC's Mot. to Dismiss Pls.' First Am. Compl., ECF No. 62; Def. AT&T Corp.'s Mot. to Dismiss Pursuant to Rule 8 & Rule 12(B)(6), ECF No. 66; Mot. of Def. ABRY Partners VII, LP to Dismiss First Am. Compl., ECF No. 69.

From February to May of 2019, Plaintiffs moved for five extensions of time to respond to Defendants' motions to dismiss. Pl.'s Mot. for Extension of Time to Object to Defs.' Mots. to

Dismiss, ECF No. 82; Pl.'s Second Mot. for Extension of Time to Object to Defs.' Mots. to Dismiss, ECF No. 85; Pl.'s Third Mot. for Extension of Time to Object to Defs.' Mots. to Dismiss, ECF No. 87; Pl.'s Final Mot. for Extension of Time to Object to Defs.' Mots. to Dismiss, ECF No. 89; Pl.'s Mot. for Extension of Time to Object to Defs.' Mots. to Dismiss, ECF No. 90; *see also* Order Granting Pl.'s Mot. for Extension of Time to File Resps., ECF No. 83; Order Granting Pl.'s Mot. for Extension of Time to File Resp., ECF No. 86; Order Granting Pl.'s Mot. for Extension of Time to File Resp., ECF No. 88.

On May 9, 2019, Defendant ABRY opposed Plaintiffs' motion for an extension of time. Opp'n of Def. ABRY to Pls.' Mot for Extension of Time to Object to Defs.' Mots. to Dismiss, ECF No. 91.

On May 10, 2019, the Court granted Plaintiffs' motion for extension of time until May 24, 2019 to file responses. Order Granting Pl.'s Mot. for Extension of Time to File Resps., ECF No. 92.

On June 20, 2019, Plaintiffs' objected to Defendants Securus and Platinum's motions to dismiss. Pls.' Obj. to Defs. Securus & Platinum's Mots. to Dismiss, ECF No. 97.

On July 23, 2019, the date of the hearing on all pending motions, oral argument did not go forward as scheduled. Min. Entry, ECF No. 101.[3]

## II.     STANDARD OF REVIEW

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a). Any claim that fails "to state a claim upon which relief can be granted" will be dismissed. FED. R. CIV. P. 12(b)(6). In reviewing a

---

[3] Given the many extensions already granted in this case, the Court exercised its discretion to rule on the pending motions without oral argument. D. Conn. L. Civ. R. 7(a)(3) ("[T]he Court may, in its discretion, rule on any motion without oral argument."); *see generally Dietz v. Bouldin*, 136 S. Ct. 1885, 1892 (2016) (recognizing a court's inherent authority to manage its docket with a "view toward the efficient and expedient resolution of cases").

complaint under Rule 12(b)(6), a court applies a "plausibility standard" guided by "two working principles." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

First, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." (internal citations omitted)). Second, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679. Thus, the complaint must contain "factual amplification . . . to render a claim plausible." *Arista Records LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (quoting *Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir. 2009)).

When reviewing a complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the court takes all factual allegations in the complaint as true. *Iqbal*, 556 U.S. at 678. The court also views the allegations in the light most favorable to the plaintiff and draws all inferences in the plaintiff's favor. *Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 359 (2d Cir. 2013); *see also York v. Ass'n of the Bar of the City of New York*, 286 F.3d 122, 125 (2d Cir. 2002) ("On a motion to dismiss for failure to state a claim, we construe the complaint in the light most favorable to the plaintiff, accepting the complaint's allegations as true."), *cert. denied*, 537 U.S. 1089 (2002).

*Pro se* complaints "must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (internal quotation marks omitted) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d

Cir. 2006)); *cf. Teichmann v. New York*, 769 F.3d 821, 825 (2d Cir. 2014) ("Although we liberally construe Teichmann's *pro se* amended complaint, we still require that he plead facts sufficient to state a claim to relief that is plausible on its face.") (citing *Triestman*, 470 F.3d at 474, and quoting *Iqbal*, 556 U.S. at 678) (internal quotation marks omitted); *Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 387 (2d Cir. 2015) ("Because Fowlkes appeared *pro se* before the District Court, he is 'entitled to special solicitude,' and we will read his pleadings 'to raise the strongest arguments that they suggest.' . . . . At the same time, a *pro se* complaint must allege 'enough facts to state a claim to relief that is plausible on its face.'") (quoting *Triestman*, 470 F.3d at 477; *Twombly*, 550 U.S. at 570).

## III.  DISCUSSION

### A.  Claims against AT&T

AT&T argues that the Court should dismiss all claims against it because Plaintiffs have alleged "no facts whatsoever . . . against AT&T" and did not name AT&T in the First Amended Complaint. Def. AT&T Corp.'s Mot. to Dismiss Pursuant to Rule 8 & Rule 12(B)(6) at 1.

The Court agrees.

Plaintiffs have alleged no relevant conduct or connection to AT&T, and it appears that Plaintiffs no longer intend to name AT&T as a party to this lawsuit. *See* First Am. Compl. As a result, Plaintiffs have failed to state a plausible claim for relief against AT&T. *Fowlkes*, 790 F.3d at 387 ("At the same time, a *pro se* complaint must allege 'enough facts to state a claim to relief that is plausible on its face.'").

Accordingly, the claims against AT&T will be dismissed.

### B.  Claims against ABRY Partners

ABRY Partners VII, LP argues that the Court should dismiss all claims against it

because: (1) Plaintiffs failed to properly serve ABRY Partners; (2) Plaintiffs have not alleged that ABRY Partners "did anything . . . . [and] ABRY's mere status as a shareholder does not make it liable for any conduct by Securus;" and (3) the Court lacks personal jurisdiction over ABRY Partners. Mem. in Supp. of ABRY Partners VII, LP's Mot. to Dismiss First Am. Compl. ("ABRY Mem."), ECF NO. 69-1 at 1–2.

The Court agrees.

### 1.    Service of Process

"On a Rule 12(b)(5) motion to dismiss, the plaintiff bears the burden of establishing that service was sufficient." *Khan v. Khan*, 360 F. App'x 202, 203 (2d Cir. 2010) (citing *Burda Media, Inc. v. Viertel*, 417 F.3d 292, 298 (2d Cir. 2005)). The Second Circuit reviews a district court's dismissal for failure to serve process for abuse of discretion. *Id*. (citing *Zapata v. City of New York*, 502 F.3d 192, 195 (2d Cir.2007)).

Under Rule 4(h) a plaintiff may serve a domestic or foreign partnership as dictated by state law or "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process and—if the agent is one authorized by statute and the statute so requires—by also mailing a copy of each to the defendant." FED. R. CIV. P. 4(h)(1)(A–B).

Under Connecticut law, a "foreign partnership is deemed to have appointed the Secretary of the State as its attorney and to have agreed that any process in any civil action brought against the . . . foreign partnership . . . may be served upon the Secretary of the State." CONN. GEN. STAT. § 52-59b.

As an initial matter, Plaintiffs seem to have served a non-existent entity: ABRY Partners. ABRY Mem. at 2.

Additionally, Plaintiffs allegedly "purported to serve Abry Partners by certified mail[.]" *Id*. Such service is legally insufficient. CONN. GEN. STAT. § 52-59b (designating the Connecticut Secretary of State as the proper recipient for service of process to foreign partnerships). As a result, Plaintiffs have not met "the burden of establishing that service was sufficient." *Khan*, 360 F. App'x at 203.

Even if Plaintiffs had properly served ABRY Partners VII, LP, that entity is not liable for the actions of Securus.

## 2. Vicarious Liability

"It is a general principle of corporate law deeply ingrained in our economic and legal systems that a parent corporation . . . is not liable for the acts of its subsidiaries." *Kiobel v. Royal Dutch Petroleum Co*., 621 F.3d 111, 194 (2d Cir. 2010), *aff'd*, 569 U.S. 108 (2013) (quoting *United States v. Bestfoods*, 524 U.S. 51, 61, (1998)). "[T]his principle of corporate separateness may be disregarded when a subsidiary acts as an agent of its parent . . . . [or] when the subsidiary is merely an alter ego of the parent." *Kiobel*, 621 F.3d at 194. But "[o]rdinarily, subsidiary corporations are not deemed to be the agents of their corporate parents." *Id*. at 195 ("No facts alleged in the Complaint plausibly support the inference that SPDC was a mere instrument of its corporate parents. There is no allegation that SPDC was undercapitalized, failed to maintain corporate formalities, or that its officers ceded control to Shell, from which we might infer domination. The mere allegation that 'Shell and SPDC' engaged in certain conduct does not plausibly plead specific facts which would justify treating SPDC as the alter ego of Shell. Accordingly, on the facts alleged, the Complaint fails to plead a basis for a claim of agency or alter ego liability.") (internal citations omitted).

ABRY Partners VII, LP argues that its ownership stake in Securus is insufficient to

establish vicarious liability for Securus's actions. ABRY Mem. at 3–5.

The Court agrees.

Plaintiffs name ABRY Partners in a footnote stating that "Abry Partners . . . [was] at relevant times the owner of Securus Technologies, Inc." First Amended Complaint at 1, n.A. Even if this was true, that ownership stake, alone, cannot establish ABRY Partners VII, LP's vicarious liability for Securus's conduct. *Kiobel*, 621 F.3d at 195 ("Ordinarily, subsidiary corporations are not deemed to be the agents of their corporate parents."). Plaintiffs have not alleged that Securus was acting as an agent, mere instrument, or alter ego of ABRY Partners VII, LP. *Id*. at 194. Plaintiffs have not alleged that ABRY Partners VII, LP knew about the particular services provided or fees charged to Connecticut inmates.

As a result, Plaintiffs' "[c]omplaint fails to plead a basis for a claim of agency or alter ego liability." *Id*. at 195; *see Fowlkes*, 790 F.3d at 387 ("At the same time, a *pro se* complaint must allege 'enough facts to state a claim to relief that is plausible on its face.'").[4]

Accordingly, the claims against ABRY Partners will be dismissed.

## C.    Claims against Platinum Equity

Platinum Equity argues that its ownership of Securus as a subsidiary is insufficient to establish its liability for Securus's actions. Def. Platinum Equity, LLC's Mem. of Law in Supp. of its Mot. to Dismiss Pls.' First Am. Compl., ECF No. 62 at 6–7.

The Court agrees.

As explained above, a parent corporation is not ordinarily liable for the actions of its subsidiary. *Kiobel*, 621 F.3d at 195 ("Ordinarily, subsidiary corporations are not deemed to be

---

[4] Having dismissed Plaintiffs' claims against ABRY Partners VII, LP for insufficient service of process and as insufficient to state a vicarious liability claim, the Court need not and does not reach the merits of Defendant ABRY Partners VII, LP's personal jurisdiction arguments.

the agents of their corporate parents."). To survive a motion to dismiss, Plaintiffs must plausibly allege that the subsidiary organization "act[ed] as an agent of its parent . . . . [or was] merely an alter ego of the parent." *Id.* at 194.

Plaintiffs name Defendant Platinum Equity, LLC in a footnote stating that "Platinum Equity, LLC [was] at relevant times the owner of Securus Technologies, Inc." First Am. Compl. at 1, n.A. For the reasons explained above, this allegation is an insufficient "basis for a claim of agency or alter ego liability," *Kiobel*, 621 F.3d at 195; *see Fowlkes*, 790 F.3d at 387 ("At the same time, a *pro se* complaint must allege 'enough facts to state a claim to relief that is plausible on its face.'").

Accordingly, the claims against Defendant Platinum Equity, LLC will be dismissed.

**D.      Claims against Securus**

**1.      The Telephone Consumer Protection Act Claim**

Congress passed the Telephone Consumer Protection Act ("TCPA") to protect individual consumers from receiving intrusive and unwanted calls. *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 371 (2012) ("Congress determined that federal legislation was needed because telemarketers, by operating interstate, were escaping state-law prohibitions on intrusive nuisance calls."). Under the TCPA, it is generally unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice -- to any . . . cellular telephone service [or] residential telephone line [.]" 47 U.S.C. § 227(b)(1)(A–B); *Jennings*, 239 F. Supp. 3d at 665 (W.D.N.Y. 2017) (quoting *Physicians Healthsource, Inc. v. Boehringer Ingelheim Pharm., Inc.*, 847 F.3d 92, 94–95 (2d Cir. 2017) ("The [TCPA] creates a private right

of action, providing for statutory damages in the amount of $500 for each violation as well as injunctive relief against future violations.").

To state a claim under the TCPA, a consumer must allege that the defendant: (1) made more than one telephone call within a 12-month period, (2) to a telephone covered by the Act, (3) using an automatic dialing system, artificial or prerecorded voice, (4) without the prior consent of the recipient. *Jennings*, 239 F. Supp. 3d at 665; 47 U.S.C. § 227(b)(1)(A–B), (c)(5). The statute defines an automatic dialing system as "equipment which has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1); *King v. Time Warner Cable Inc.*, 894 F.3d 473, 481 (2d Cir. 2018) ("In sum, we conclude that the term 'capacity' in the TCPA's definition of a qualifying autodialer should be interpreted to refer to a device's current functions, absent any modifications to the device's hardware or software.").

 "[A]lleged violations of the TCPA need not be pled with particularity." *Jackson v. Caribbean Cruise Line, Inc.*, 88 F. Supp. 3d 129, 138 (E.D.N.Y. 2015) (citing *McCabe v. Caribbean Cruise Line, Inc.*, No. 13-CV-6131, 2014 WL 3014874, at *1, 4 (E.D.N.Y. July 3, 2014) ("On or about September 23, 2013, McCabe, a New York resident, received a free cruise robocall on his cellular telephone, which has a New York area code. The automated recording encouraged McCabe to 'press 1' to take a 'free cruise survey . . . .' I conclude, however, that McCabe's allegations that the call he received contained a 'prerecorded message' and was made by an 'automatic-dialing mechanism,' are sufficient to plausibly state a claim under these statutes.") (internal citations omitted)); *Owens v. Starion Energy, Inc.*, No. 3:16-CV-01912 (VAB), 2017 WL 2838075, at *5 (D. Conn. June 30, 2017) ("In the absence of any binding case

law indicating otherwise, this Court . . . concludes that detailed allegations regarding the time and date of each telephone call are not required at this early stage.").

But "[p]laintiffs must do more than simply parrot the statutory language." *Baranski v. NCO Fin. Sys., Inc.*, No. 13 CV 6349 ILG JMA, 2014 WL 1155304, at *6 (E.D.N.Y. Mar. 21, 2014) (collecting cases and explaining that "although there is no binding precedent in this circuit, the vast majority of courts to have considered the issue have found that a bare allegation that defendants used an ATDS is not enough.") (alterations in original).

Plaintiffs argue that Securus violated the TCPA by making "unauthorized robo calls to each of the plaintiffs between January 1, 2015 and July 1, 2017" on "multiple occasions during . . . the aforementioned time period without plaintiffs' consent or authorization." First Am. Compl. at 11, 13.

Securus argues that the Plaintiffs have "parrot[ed] the statutory language while providing no factual allegations necessary to support a TCPA claim." Securus Technologies, Inc.'s Mem. of Law in Supp. of its Mot. to Dismiss Pls.' First Am. Compl. ("Securus Mem."), ECF No. 61 at 13.

The Court agrees.

As an initial matter, Plaintiffs have not alleged that Securus called them more than once in any 12-month period. 47 U.S.C. § 227(c)(5) (providing a private right of action to a "person who has received more than one telephone call within any 12-month period").

Furthermore, Plaintiffs have not stated whether Securus dialed home or office telephone numbers. *See Owens*, 2017 WL 2838075, at *3–4 ("Starion Energy argues that the telephone number it allegedly contacted was a business line, not a residential number as required for TCPA protection . . . . Ms. Owens does not dispute that the telephone number in question was held out

as a business number; however, she claims that the business is a home-based business, thus the number was one and the same as her residential telephone number and is covered by the TCPA . . . . the Court cannot conclude that Ms. Owens has failed to state a claim for relief under the TCPA.").

Plaintiffs have not provided any factual detail to support an inference that an automatic telephone dialing system, artificial or prerecorded voice was used. *See Baranski*, 2014 WL 1155304, at *6 ("As various courts have made clear, the use of an ATDS can be plausibly inferred from allegations regarding, for example, the robotic sound of the voice on the other line, the lack of human response when he attempted to have a conversation with the person calling him, or the generic content of the message he received.") (internal quotation marks and citation omitted).

As a result, Plaintiffs have failed to state a plausible TCPA claim. *See Baranski*, 2014 WL 1155304, at *6 ("[A]lthough there is no binding precedent in this circuit, the vast majority of courts to have considered the issue have found that a bare allegation that defendants used an ATDS is not enough."); *Iqbal*, 556 U.S. at 678 ("[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

Accordingly, Plaintiffs' claim under the TCPA will be dismissed.

## 2. Connecticut Unfair Trade Practices Act Claim

CUTPA provides that "no person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." CONN. GEN. STAT. § 42-110B (A).[5] It further provides that "[a]ny person who suffers any ascertainable loss of

---

[5] Plaintiffs have plausibly alleged that they are Connecticut residents and Securus is "a privately held corporation headquartered in Dallas, Texas." Am. Compl. at 2. As a result, the Court likely has diversity jurisdiction under 28 U.S. Code § 1332, and will address the merits of Plaintiffs' state law claims.

money or property, real or personal, as a result of the use or employment of a method, act or practice prohibited by section 42-110 b, may bring a civil action" based on CUTPA. *Id.* § 42-110G; *see also Garcia v. Fry*, 186 F. Supp. 3d 228, 233 (D. Conn. 2016). To determine if an act or practice violates CUTPA, Connecticut courts consider:

> (1) [W]hether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise—in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers, [competitors or other businesspersons].

*Ventres v. Goodspeed Airport, LLC*, 275 Conn. 105, 155, 881 A.2d 937, 969 (2005).

Plaintiffs argue that Securus charged them "exploitive fees" to pay "kickback payments" in violation of CUTPA. First Am. Compl. at 11–12.

Securus argues that Plaintiffs' CUTPA claim should be dismissed because (1) the conduct at issue falls within an exception to CUTPA, and (2) the filed rate doctrine bars Plaintiffs' claims. Securus Technologies, Inc.'s Mem. in Supp. of its Mot. to Dismiss Pls.' First Am. Compl. at 5–11.

### a. Exception to CUTPA

CUTPA does not cover "[t]ransactions or actions otherwise permitted under law as administered by any regulatory board or officer acting under statutory authority of the state or of the United States." CONN. GEN. STAT. § 42-110c(a). The burden of proving the exemption rests with the party claiming it. *In re Connecticut Mobilecom, Inc.*, No. 02-02519 WHP, 2003 WL 23021959, at *5 (S.D.N.Y. Dec. 23, 2003) (citing CONN. GEN. STAT. § 42-110c(b)).

When determining if a statutory exception exists, courts "focus on the broader pattern of activity by the defendant, not the specific allegations of misconduct." *Garcia*, 186 F. Supp. 3d at 234–35 (recognizing that "state marshals are 'creatures of statute, vested with nearly exclusive

authority to serve process, including wage executions,' and are 'regulated by the State Marshal Commission' . . . . Thus, because the attempted service falls within a broader pattern of activity, i.e., service of process, otherwise permitted under state law as administered by statutory authority of the state, Fry's action is exempt from CUTPA.") (citing *Connelly v. Hous. Auth. of City of New Haven,* 213 Conn. 354, 361, 567 A.2d 1212, 1216 (1990) (recognizing that "the actions of the defendant, a creature of statute, are expressly authorized and pervasively regulated by both the state department of housing and HUD. As such, the plain language of § 42–110c exempts the leasing or renting of apartments by the defendant from CUTPA scrutiny.")); *see also Pierce v. Lantz*, No. CV084031139, 2010 WL 4884676, at *4, 6 (Conn. Super. Ct. Aug. 10, 2010) (recognizing in a case brought by a state prisoner that "[t]he commissioner promulgated administrative directive 3.8(18) pursuant to statutory authority. The plain language of CUTPA prevents the plaintiff from seeking redress under its provisions. Therefore, the plaintiff's CUTPA claim against the commissioner of correction must fail on this ground as well."); *cf. In re Connecticut Mobilecom, Inc.*, 2003 WL 23021959, at *5 ("[T]here is no alternative statutory scheme, either in Connecticut or at the federal level, to govern the non-rate setting business practices of common carriers . . . . Because plaintiffs' CUTPA claim is premised on issues other than Verizon Wireless' rates, including, *inter alia*, a defamatory campaign and pretextual negotiations for the purpose of stealing Mobilecom's customer base, Verizon Wireless . . . . has not met its burden . . . in favor of exemption, its motion to dismiss Count I of the Complaint on the basis that CUTPA is inapplicable to wireless common carriers is denied.").

Securus argues that Plaintiffs' CUTPA claim should be dismissed because "[t]he State of Connecticut . . . regulates all of the conduct that forms the basis of Plaintiff's claims." Securus Mem. at 5.

The Court agrees.

Securus provides inmate calling services under the terms of a contract with the State of Connecticut. "Information Processing Systems Agreement [#10ITZ0119MA] between The State of Connecticut Acting by its Department of Administrative Services and Securus Technologies, Inc." ("Securus Contract"), Securus Mem., Ex. 1, ECF No. 61-2. The contract governs the hardware, *id*. at 7, 10, software, *id*. at 10, and monthly payments to the state, *id*. at 9.

Securus' fees, including its call distance calculation methods and calling card, debit card, and AdvanceConnect fee structures, are governed by a tariff agreement approved by the State. Tariff Applicable to Alternate Operator Services within the State of Connecticut Provided by Securus Technologies, Inc. ("Tariff Agreement"); Ex. 2, ECF No. 61-3 at 20–31; *see* Dept. Energy and Envtl. Prot.: Pub. Util. Regulatory Auth., "Tariffs and Interconnection Agreements: Securus Technologies, Inc." (n.d.) www.dpuc.state.ct.us/DPUCRevisedTariffs.nsf/ b452c926515dc00685256a61005a5144/85256aa9004aaeae85257c69006de5a3?OpenDocument, at 21–22 ("Other Charges: Inmate Station Service Charge . . . . Bill Processing Charge . . . . Location Validation Fee . . . . State Cost Recovery Fee). The state cost recovery fee section of the tariff agreement anticipates that Securus will pay a variety of costs and fees to the state of Connecticut. *Id*. at 22.

The allegedly exploitative fees charged Plaintiffs, First Am. Compl. at 11–12, thus were overseen and approved by the Connecticut Public Utilities Regulatory Authority. Tariff Agreement at 20–31. The payments to state agencies, which Plaintiffs characterize as "kickbacks", First Am. Compl. at 11–12, were contractually required by the State of Connecticut and approved by the Connecticut Public Utilities Regulatory Authority. Securus Contract at 9; Tariff Agreement at 22.

In summary, Securus's "broad[] pattern of activity" with respect to inmate calling services in the state of Connecticut was highly—if not entirely—regulated by the Connecticut Public Utilities Regulatory Authority. *Garcia*, 186 F. Supp. 3d at 234–35 ("As the defendant notes, state marshals are 'creatures of statute, vested with nearly exclusive authority to serve process, including wage executions,' and are 'regulated by the State Marshal Commission' . . . . Thus, because the attempted service falls within a broader pattern of activity, i.e., service of process, otherwise permitted under state law as administered by statutory authority of the state, Fry's action is exempt from CUTPA.").

The contract and regulatory filings submitted by Securus, *see* Securus Contract; Tariff Agreement, demonstrate that Securus's inmate calling service fees, commissions, and related activities were "expressly authorized and pervasively regulated" by the State of Connecticut. *Connelly,* 213 Conn. at 361 ("In the present case, however, the actions of the defendant, a creature of statute, are expressly authorized and pervasively regulated by both the state department of housing and HUD. As such, the plain language of § 42–110c exempts the leasing or renting of apartments by the defendant from CUTPA scrutiny.").

Securus therefore has sufficiently demonstrated that the activities described by Plaintiffs are exempt from CUTPA. *In re Connecticut Mobilecom, Inc.*, 2003 WL 23021959, at *5 (explaining that the burden of proving the exemption rests with the party claiming it).

Accordingly, Plaintiffs' CUTPA claims will be dismissed. *See Teichmann*, 769 F.3d at 825 ("Although we liberally construe Teichmann's *pro se* amended complaint, we still require that he plead facts sufficient to state a claim to relief that is plausible on its face.")

b.      *Filed Rate Doctrine*

The filed rate doctrine "holds that any 'filed rate'—that is, one approved by the governing regulatory agency—is per se reasonable and unassailable in judicial proceedings brought by ratepayers." *Simon v. KeySpan Corp*., 694 F.3d 196, 204 (2d Cir. 2012) (quoting *Wegoland Ltd. v. NYNEX Corp*., 27 F.3d 17, 18 (2d Cir.1994)); *see also Ark. La. Gas Co. v. Hall*, 453 U.S. 571, 577 (1981) ("These straightforward principles underlie the 'filed rate doctrine,' which forbids a regulated entity to charge rates for its services other than those properly filed with the appropriate federal regulatory authority.").

The doctrine has "'been extended across the spectrum of regulated utilities,'" *Simon*, 694 F.3d at 204 (quoting *Ark. La. Gas Co*., 453 U.S. at 577), including the telecommunications industry, *Marcus v. AT&T Corp*., 138 F.3d 46, 59, 62 (2d Cir. 1998) ("All appellants allege that AT & T's advertising and bills are false and misleading because they fail to disclose the rounding-up policy . . . . We add that the filed rate doctrine likewise bars all of the remaining state law claims for damages brought by the Marcus appellants, because any award of damages would . . . implicate the nondiscrimination and nonjusticiability strands of the filed rate doctrine.").

"When the filed rate doctrine applies, it is rigid and unforgiving." *Simon*, 694 F.3d at 204–205 ("It applies even when a claim is based on fraud or impropriety in the method by which the rate is determined."). "[I]t bars both state and federal claims." *Id.* at 205; *see also Marcus*, 138 F.3d at 62 (2d Cir. 1998) (noting that "any award of damages would . . . implicate the nondiscrimination and nonjusticiability strands of the filed rate doctrine").

Securus argues that "[t]he filed rate doctrine also independently bars Plaintiffs' CUTPA claims." Def. Mem. at 8.

The Court agrees.

As discussed above, Securus filed its rates with the Connecticut Public Utilities Regulatory Authority. Tariff Agreement. Securus disclosed to regulators its methods for calculating call distances, AdvanceConnect fees, and additional charges to cover its state costs. *Id*. Because Securus's rates and fees were filed with state regulators, they are "per se reasonable and unassailable in judicial proceedings brought by ratepayers." *Simon*, 694 F.3d at 204. Even if Plaintiffs' "kickback" arguments implicate fraud, those claims are barred by the filed rate doctrine. *Id.* at 204–205 ("When the filed rate doctrine applies, it is rigid and unforgiving . . . . It applies even when a claim is based on fraud or impropriety in the method by which the rate is determined.").

Because Plaintiffs' claims are barred by the filed rate doctrine, they will be dismissed. *See Teichmann*, 769 F.3d at 825 ("Although we liberally construe Teichmann's pro se amended complaint, we still require that he plead facts sufficient to state a claim to relief that is plausible on its face.").

### 3.     Unjust Enrichment Claim

Unjust enrichment is "a broad and flexible remedy," "[w]ith no other test than what, under a given set of circumstances, is just or unjust, equitable or inequitable, conscionable or unconscionable." *Vertex, Inc. v. City of Waterbury*, 278 Conn. 557, 573 (2006). In order to recover for unjust enrichment, a plaintiff "must prove (1) that the defendants were benefited, (2) that the defendants unjustly did not pay the plaintiffs for the benefits, and (3) that the failure of payment was to the plaintiffs' detriment." *Id.*

Securus argues that Plaintiffs' unjust enrichment claims must be dismissed because "the filed rate doctrine bars all state law based claims seeking any relief that challenges the rates or

the provision of services set forth in a filed tariff." Def. Mem. at 11.

The Court agrees.

As discussed above, Securus's fees are "per se reasonable[.]" *Simon*, 694 F.3d at 204. As the Second Circuit explained in *Marcus*, "[i]n order to succeed on their claim for unjust enrichment, [those moving for relief] must demonstrate that, in the absence of a contract, one party nonetheless possesses money under such circumstances that in equity and good conscience he ought not to retain it, and which ex ae quo et bono belongs to another." *Marcus*, 138 F.3d at 64 (internal citation and quotation marks omitted). Accordingly, to the extent that Securus "charged only the filed rates[, it] is not in possession of any money which, "in equity and good conscience, properly belongs" to the Plaintiffs. *Id.* ("The district court properly dismissed this claim as well. AT & T has charged only the filed rates that it is required by law to charge; it is not in possession of any money which, in equity and good conscience, properly belongs to appellants.")

Here, there is no allegation that Securus charged more than the rates disclosed to state regulators.[6] As a result, Plaintiffs cannot, as a matter of law, demonstrate that Defendants did not properly compensate them for benefits received or were unjustly enriched. *Vertex, Inc.*, 278 Conn. at 573; *Teichmann*, 769 F.3d at 825 (explaining that "we still require [the *pro se* plaintiff to] plead facts sufficient to state a claim to relief that is plausible on its face.").

Accordingly, Plaintiffs' unjust enrichment claim will be dismissed.

## IV.   CONCLUSION

For the reasons set forth above, Defendants' motions to dismiss, ECF No. 60, 62, 66, 69, are **GRANTED**. The claims against AT&T, ABRY, and Platinum are dismissed with prejudice,

---

[6] Indeed, in the First Amended Complaint, Plaintiffs have not asserted specific rates or charges at all.

as are the CUTPA and unjust enrichment claims against Securus.

To the extent that Plaintiffs can cure the deficiencies of their TCPA claims, the Court grants them leave to amend the First Amended Complaint.[7] Plaintiffs must file their Second Amended Complaint by **August 30, 2019**. Failure to timely file a Second Amended Complaint will result in the dismissal of Plaintiffs' TCPA claims, with prejudice.

The Clerk of Court is respectfully directed to immediately dismiss Defendants AT&T Corp., ABRY Partners (i.e., "ABRY Partners VII, LP"), and Platinum Equity LLC from this lawsuit.

SO ORDERED at Bridgeport, Connecticut, this 25th day of July, 2019.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE

---

[7] Rule 15 of the Federal Rules of Civil Procedure provides that a party may either amend once as a matter of course within 21 days of service or the earlier of 21 days after service of a required responsive pleading or motion under Rule 12 (b), (e) or (f). FED. R. CIV. P. 15(a)(1). Once that time has elapsed, a party may move for leave to file an amended pleading. FED. R. CIV. P. 15 (a)(2). Courts "should freely give leave [to amend] when justice so requires." *Id.*; *see also Friedl v. City of New York*, 210 F.3d 79, 87 (2d Cir. 2000) ("[D]istrict courts should not deny leave unless there is a substantial reason to do so[.]").